NOT DESIGNATED FOR PUBLICATION

No. 130,039

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Parentage of B.B.-K., by and through J.K., *Appellee*, and M.B.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JACQUELYN E. ROKUSEK, judge. Submitted without oral
argument. Opinion filed July 10, 2026. Appeal dismissed.

*M.B.*, appellant pro se.

No appearance for appellee.

Before HILL, P.J., ISHERWOOD and BOLTON FLEMING, JJ.

PER CURIAM:  In this appeal, M.B. appeals the district court's temporary order
issued in a paternity action that placed her minor child, B.B.-K., in the custody of the
Department for Children and Families. M.B. raises multiple allegations of error on
appeal, but because the order M.B. appeals is not "[a] final decision in any action"
pursuant to K.S.A. 60-2102(a)(4), we do not have subject matter jurisdiction to consider
her appeal. Accordingly, the appeal is dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Appellee, J.K., filed a petition to determine the paternity of a minor child,
B.B.-K., in Johnson County District Court. Appellant, M.B., cross-petitioned for child
support. Both parties agreed there was no question of parentage and that J.K. was the

1

father. All pending issues were eventually resolved, and the district court entered an order addressing paternity, custody, and child support.

As the years went on, the parties participated in mediation several times and made changes to the parenting plan. For the most part, the parties were able to resolve issues involving the minor child on their own. But on October 10, 2025, J.K. filed an emergency motion requesting sole legal custody of B.B.-K. J.K. alleged that M.B. had abandoned the child two weeks earlier, leaving the child with the child's maternal grandmother at a retirement home. J.K. also indicated that the Department for Children and Families (DCF) had been contacted to start an investigation. J.K. also alleged that he was unable to contact M.B. The district court found a material change in circumstances warranted an ex parte modification of custody and awarded sole custody to J.K. The minor child was ordered to live and attend school in Bonner Springs with J.K. The district court set a review hearing for October 31, 2025, via Zoom.

On October 31, 2025, J.K. and M.B. both appeared via Zoom for the hearing without counsel. M.B. had filed a motion to transfer venue, arguing none of the parties lived in Johnson County. She also challenged the basis of the ex parte order. The district court scheduled a hearing for November 21, 2025, to address the temporary custody of B.B.-K. and M.B.'s motion to transfer venue.

On November 21, 2025, the parties again appeared via Zoom and without counsel. The district court noted that the parties had filed a joint motion notifying the court they had reached a custody agreement. But the district court remained concerned about the well-being of the minor child. J.K. acknowledged that B.B.-K. was still residing with the maternal grandmother in a retirement home rather than with him as the district court had ordered. M.B. indicated that she had a place to live and as soon as the district court's temporary custody orders were lifted, B.B.-K. could live with her. M.B. stated she was living in a two-bedroom apartment with a man and his child. M.B. explained that she was

2

"not in an official relationship" with the man but that they shared a bedroom. B.B.-K. would share a bedroom with the other child. M.B. explained that B.B.-K. had gone to stay with his grandmother to avoid drama in the home, which the district court noted was a protection from abuse case that was later dismissed. M.B. also told the judge that she had a plan to move in the next few days into a 32-foot trailer at a KOA campground.

At the conclusion of the hearing, the district court found that B.B.-K. did not have a permanent residence and was at risk of being homeless. The district court also found that the child was neglected and in need of care. The district court entered a Custody Order for Non-Parental Residency pursuant to K.S.A. 23-2707(a)(3) and K.S.A. 23-3207(c) finding probable cause that B.B.-K. was a child in need of care and placing him in the custody of DCF. The district court also entered a companion Journal Entry of Hearing memorializing the factual findings of the court. The court ordered a transcript of the proceeding be sent to the county attorney's office so that it could consider filing a child in need of care (CINC) case. M.B. asked the district court about her motion to transfer venue. The district court explained it would be heard at the next hearing on December 3, 2025.

The district court held another hearing on December 3, 2025, and J.K. and M.B. appeared without counsel. J.K. testified that B.B.-K. was now residing with M.B.'s sister in Topeka. The district court stated that it had "continuing exclusive jurisdiction. I'm not willing to move the case at this time because there is a potential pending Child In Need of Care case, and I don't know whether it will get filed or not." The district court continued the hearing on M.B.'s motion for change of venue to January 8, 2026. The district court noted "[t]his hearing may be canceled if the case is referred to Division 10 or declined by the State." Shortly after, a separate CINC case was filed by the county attorney. That case is not the subject of this appeal.

M.B. filed a notice of appeal on December 10, 2025.

ANALYSIS

*We lack subject matter jurisdiction to consider M.B.'s appeal.*

We are required to independently question subject matter jurisdiction because "subject matter jurisdiction is a question that may be raised at any time, including for the first time on appeal or even on an appellate court's own motion." *Padron v. Lopez*, 289 Kan. 1089, 1103, 220 P.3d 345 (2009). The right to appeal is statutory and is not a right contained in the United States or Kansas Constitutions. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). This means when the record discloses a lack of jurisdiction, an appellate court must dismiss the appeal. *Wiechman*, 304 Kan. at 84-85.

An appeal may be taken to this court as a matter of right from a "final decision" pursuant to K.S.A. 60-2102(a)(4), which provides that the court of appeals has jurisdiction over appeals "as a matter of right from:  . . . [a] final decision in any action." Under Kansas law, a final decision generally disposes of all issues in a case and leaves no possibility of action by the district court. *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015).

The first step in determining whether this court has jurisdiction is to determine the nature of M.B.'s appeal. This is not a straightforward determination because in M.B.'s amended docketing statement, she indicated she was filing an interlocutory appeal within a CINC case. M.B. wrote, "This is an appeal from an interlocutory order entered by the District Court of Johnson County, Kansas, in a Child in Need of Care ("CINC") proceeding." The same amended docketing statement indicated that M.B. had filed her appeal in Johnson County Case Number 11CV10554—not a CINC case but a paternity action. And while M.B. included the statement, "This appeal arises from a custody determination and Child in Need of Care ('CINC')," in the opening paragraph of her brief, M.B.'s arguments within her brief pertain to the paternity action.

As a panel of our court has acknowledged, "Appellate courts do not have jurisdiction when the notice of appeal and docketing statement describe completely different issues than those raised in an appellant's brief." *State v. Clark*, No. 105,614, 2012 WL 718949, at *1 (Kan. App. 2012) (unpublished opinion). We will nonetheless address both the issues in M.B.'s docketing statement and brief because "if it is possible for an issue raised to fall within the scope of the language of the notice of appeal, then appellate courts have jurisdiction to consider the issue." *Clark*, 2012 WL 718949, at *1.

We will first address M.B.'s claim in her docketing statement that she was bringing an interlocutory appeal. While M.B. indicated in her amended docketing statement that she was making an interlocutory appeal, M.B. did not argue in her brief that her appeal was interlocutory in nature, nor did she allege any of the grounds that might support an interlocutory appeal. "[A]n issue improperly briefed will be deemed waived or abandoned." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020). Moreover, M.B.'s claim is not properly the subject of an interlocutory appeal. K.S.A. 60-2102(c) (describing procedure for interlocutory appeals). "This statute requires that an interlocutory appeal must: (1) involve a controlling question of law; (2) relate to an issue on which there is a substantial ground for difference of opinion; (3) materially advance the litigation's ultimate termination; and (4) be timely filed." *City of Neodesha v. BP Corporation*, 295 Kan. 298, 310, 287 P.3d 214 (2012). M.B. did not allege any of the grounds that might support an interlocutory appeal, and that claim is not properly before us.

Second, M.B.'s brief differs from the docketing statement in that it challenges the district court's order within the paternity action—not a CINC case. M.B.'s brief clearly references the procedural history and facts from 11CV10554—the paternity action. M.B.'s brief makes it clear that she is challenging the Custody Order for Non-Parental Residency entered by the district court on November 21, 2025, in the paternity action. This order operated to remove B.B.-K. from the care and custody of the parties and

placed him in the custody of DCF. Thus, though M.B.'s docketing statement indicated her appeal was from a CINC case, within her brief, she challenges the order of the district court from the paternity action.

We pause here to explain the difference between a paternity action and a CINC case. The district court order that M.B. is appealing in her brief was ordered by the court within a *paternity action.* Specifically, the Custody Order for Non-Parental Residency filed on November 21, 2025, was based on two statutes: K.S.A. 23-2707(a)(3) and K.S.A. 23-3207(c). Both statutes appear under Chapter 23 of the Kansas Statutes Annotated which is known as the Revised Kansas Family Law Code. The purpose of the Revised Kansas Family Law Code is "to secure the just, speedy, inexpensive and equitable determination of issues in all domestic relations matters." K.S.A. 23-2102.

In comparison, CINC cases are not filed under Chapter 23; rather, those cases are filed under Chapter 38, Article 22 of the Kansas Statutes Annotated—otherwise known as the Revised Kansas Code for Care of Children. This act "shall be liberally construed to carry out the policies of the state" which pertain to the safety and welfare of children. K.S.A. 38-2201(b). Unlike the Revised Family Law Code, which generally seeks to settle custody disputes between private parties, typically parents, the Revised Code for Care of Children authorizes the State of Kansas (and other private actors) to file an action in order to protect children.

Despite these differences, domestic and CINC cases do intersect in limited situations such as in this case. In the event a district court judge believes, within a Chapter 23 domestic case, that probable cause exists that a child is a child in need of care, that judge may enter an order under K.S.A. 23-3207(c) which allows the court to award temporary residency to "a grandparent, aunt, uncle or adult sibling, or, another person or agency . . . ." Then, the State of Kansas, through its county and district attorneys, may consider filing a CINC case under Chapter 38.

6

Having noted these differences, we return to M.B.'s appeal. The plain language of each statute that formed the basis of the Custody Order for Non-Parental Residency filed on November 21, 2025, provides for *temporary* custody of the minor child until the final resolution of the action. K.S.A. 23-2707(a) allows the district court to enter orders in a Chapter 23 proceeding "during the pendency of the action until the entry of final judgment . . . ." And K.S.A. 23-3207(c) allows the court to award "temporary residency of the child to a grandparent, aunt, uncle or adult sibling, or, another person or agency" within a Chapter 23 proceeding if the court finds probable cause that the child is a child in need of care. We point out an important characteristic of these statutes—by their plain language, they provide only *temporary* relief. "The guiding principle of statutory interpretation is to give effect to the Legislature's intent whenever that intent can be determined. To discern that intent, our analysis begins with the statute's plain language, interpreting words according to their ordinary meaning." *State v. Evans*, 322 Kan. 1, 3, 584 P.3d 646 (2026). Because the Custody Order for Non-Parental Residency was a temporary order, it does not satisfy K.S.A. 60-2102(a)(4), which provides we have jurisdiction over appeals "as a matter of right from: . . . [a] final decision in any action."

While it is true that a temporary order issued in a CINC case may be appealed under K.S.A. 38-2273, M.B. did not file her appeal within a CINC case. Rather, she has appealed within a paternity action. A panel of our court has aptly explained that temporary orders issued in a paternity action do not provide the jurisdictional basis for an appeal because they are not final decisions.

In *Buhler v. McCormac*, No. 121,360, 2020 WL 1482421, at *1 (Kan. App. 2020) (unpublished opinion), the father appealed the district court's orders in a paternity action concerning child custody placement and temporary child support. The panel concluded, "It appears from this record that we are dealing with temporary orders. Because the record shows no final decision that disposes of all the merits of this paternity case, we must dismiss both appeals because we lack appellate jurisdiction." *Buhler*, 2020 WL

1482421, at *1. The panel noted the differences between a CINC case, where the appeal of a temporary order is allowed, and a paternity case, where an appeal requires a final decision on the merits. *Buhler*, 2020 WL 1482421, at *3.

Another of our panels recently considered a similar situation. In *In re Biehl and Vandeloecht*, No. 117,932, 2018 WL 2170487, at *1 (Kan. App. 2018) (unpublished opinion), the father appealed the district court's order establishing paternity while issues of custody, parenting time, and child support remained pending. The panel dismissed the appeal for lack of subject matter jurisdiction. "Upon our review, we hold the district court did not enter a final decision generally disposing of the entire merits of this paternity case and leaving no further questions or the possibility of future directions or actions by the district court." *In re Biehl*, 2018 WL 2170487, at *1.

In the present case, the original petition for paternity was filed in 2011. Over the years, the parties participated in mediation, and court-approved changes to the parenting plan were implemented. But J.K.'s motion for emergency orders began a new phase of litigation based on M.B.'s alleged abandonment of the minor child. The allegations were that J.K. could not locate M.B. and that the child was impermissibly staying at the maternal grandmother's retirement home. Once those allegations were before the district court, the district judge felt obligated to determine whether the child was at risk of becoming homeless, and in fact, found that the child did not have a permanent home and was being neglected. Issues concerning the custody of B.B.-K. remained pending in the paternity action even after the district court issued its Custody Order for Non-Parental Residency on November 21, 2025. The district court continued to review the situation until it became clear a CINC case would be filed by the State. Once the CINC case was filed, the paternity action was stayed until the CINC case was resolved, as is required by Kansas law:

8

"Any orders pursuant to this code shall take precedence over any similar order under chapter 23 of the Kansas Statutes Annotated, and amendments thereto, the Kansas family law code, article 11 of chapter 38 of the Kansas Statutes Annotated, and amendments thereto, determination of parentage, article 21 of chapter 59 of the Kansas Statutes Annotated, and amendments thereto, adoption and relinquishment act, article 30 of chapter 59 of the Kansas Statutes Annotated, and amendments thereto, guardians and conservators, or article 31 of chapter 60 of the Kansas Statutes Annotated, and amendments thereto, protection from abuse act, until jurisdiction under this code is terminated." K.S.A. 38-2201(a).

Because each of M.B.'s arguments on appeal solely relate to the Custody Order for Non-Parental Residency filed within the paternity action, and that order is not a final decision pursuant to K.S.A. 60-2102(a)(4), we do not have jurisdiction to consider M.B.'s appeal.

Appeal dismissed.